# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| MMP 10180, LLC, | No. 4:10-bk-38675-JMM |
| Debtor. | No. 4:11-bk-06081-JMM (Jointly Administered) |
| In re: | **MEMORANDUM DECISION** |
| MARK S. RUSIN and MARCHULINE K. RUSIN, | |
| Debtors. | |

In this controversy, the court has been asked to resolve, interpret and perhaps clarify a joint plan of reorganization as it affects two creditors, Business Development Finance Corporation ("BDFC") and SPCP Group IV, LLC ("SPCP"). This court has the jurisdiction to do so, making this a core proceeding. 28 U.S.C. § 157(b)(2)(A), (L) and (O).

The court has read all of the briefs, considered the entire files of the individual Debtors Mark S. Rusin and Marchuline K. Rusin ("Rusin") and the corporation, MMP 10180, LLC ("MMP"), and, in order to solve the puzzle, must begin the story at the beginning, and wend its way to the present, where the answer the legal question will reveal itself. Here goes.

# PROCEDURAL BACKGROUND

## The Rusins' Case

The Rusins filed an individual Chapter 11 case on March 10, 2011. They are the 100% shareholders of an Italian restaurant called "The Loop Taste of Chicago." That business is incorporated and is the companion Debtor herein, MMP.

When they filed, the Rusins owned a vacant parcel of land at 208 W. Fort Lowell, Tucson, Arizona worth $80,000,[1] had a couple of cars and the usual assortment of household goods (ECF No. 1). None of that property is of interest to the current dispute, but mentioning it helps the reader understand that these cases are about saving the restaurant.

The unsecured schedules of the Rusins reflect an array of credit card and miscellaneous debt typical of parties who have used credit for living expense and--as here--no doubt for the operational assistance of the restaurant's needs as well.

Two relevant exceptions stand out, however. SPCP appears on a "Home Equity Line of Credit" ("HELOC") listed as an <u>unsecured</u> creditor, for $320,000, and the U.S. Small Business Administration (we will note that it is the "BDFC" creditor) also appears in the Rusins' unsecured column for a whopping $1,152,000, as a "business loan."

These two debts are listed in the Rusins' individual case.

The total Rusin unsecured debt totals $1,761,688.44 (ECF No. 1, amended at No. 20 to $1,654,816.29).

## The Rusins' Claims Register

Both BDFC and SPCP filed proofs of claim in the Rusins' case.

BDFC's claim was filed as unsecured for $1,133,615.07 (Claim 14). It was based upon an unconditional guarantee of the debt of the corporate entity, MMP. That entity (our other

---

[1] The schedule later amended the value downward to $40,000 (ECF No. 19).

Debtor) had borrowed $1,152,000 from BDFC on May 4, 2007. The Rusins guaranteed that debt, but pledged none of their own property as collateral therefor. The Debtors, in the course of these proceedings, did not contest BDFC's claim.

SPCP also filed an unsecured claim (No. 15) for $323,842.88. This debt originated when M&I Bank extended a junior secured loan (of the home equity variety) on property then owned by the Rusins, located at 10556 N. Pistachio Ave., Oro Valley, Arizona. The home equity note was later assigned to SPCP.

From indications in the Rusins' schedules, it appears that the Pistachio Avenue property was foreclosed by the senior lender, leaving SPCP's HELOC fully unsecured (see, eg., Statement of Financial Affairs, Question 5, ECF No. 1).

## **Joint Administration**

On March 28, 2011, this court ordered that the Rusins' case be jointly administered with the MMP case (ECF No. 17). Thereafter, virtually all matters of interest proceeded under that corporate case's administration.

It now becomes necessary to peruse the happenings in that case.

## **The MMP, 10180, LLC Case**

The corporate Chapter 11 of MMP was filed on December 2, 2010. MMP operates a restaurant known as "The Loop Taste of Chicago," out of real estate premises which it owns at 10180 N. Oracle Road, Oro Valley, Arizona.

MMP, at the time of filing, believed that the improved real estate (land and buildings) was worth $1,600,000 (Schedule A at ECF No. 24). However, that realty was encumbered by the following liens:

| | | |
|---|---|---|
| 1st Position | SPCP | $1,600,000 |
| 2nd Position | BDFC/SBA | $1,152,000 |
| 3rd Position | Roger Bonus Revocable Trust | $ 140,000 |

Prior to the filing, due to payment delinquencies, SPCP had begun foreclosure proceedings, and had sought the appointment of a receiver (Statement of Financial Affairs, Questions 4 and 5, ECF No. 24).

On the personal property side, MMP valued its restaurant equipment at $44,605.

The liabilities' side of the MMP ledger included taxes to Pima County of $24,814.61, and unsecured debt totaling $1,202,402.65. Of the unsecured creditors, the largest by far was BDFC, with a debt of $1,152,000 (Schedule F at ECF No. 24).

### MMP's Claims Register

Pertinent here are the claims filed by SPCP (No. 10) and BDFC (Nos. 2 and 9).

BDFC filed two claims. Claim 2 was filed as a secured claim for $1,133,615.07. Its collateral was MMP's real estate located at 10180 N. Oracle Road. The debt originated out of a loan made May 4, 2007, for $1,152,000. It was a 20-year amortized debt requiring monthly payments of $8,854.78 (principal, interest and impounds) (Ex. A to Claim 2). The debt was secured by a deed of trust on MMP's business real estate, together with appurtenant fixtures thereon. The BDFC security package did not appear to contain any lien upon MMP's equipment, receivables, inventory or other such personalty.

BDFC's Claim 9, filed in the MMP case, was not one against MMP, but was the unsecured claim against the Rusins, individually, on their guarantee of the MMP debt.

SPCP's Claim 10 outlined its debt from MMP as a $1,601,309.09 secured debt, of which $1,314,000 represented the secured portion, while $287,309 was deemed to be unprotected by the real estate collateral, and thus unsecured.

SPCP supported its claim by also filing, as attachments, a breakdown of its debt, its deed of trust, a security interest in MMP's business personalty,[2] and promissory note for the principal sum of $1,600,000, with a 10-year maturity.

The note required monthly payments of principal and interest of $12,690.78, with a balloon payment of $1,091,638.89 at maturity, which is August 17, 2017. This note was personally guaranteed by the Rusins.

The note was modified once, to allow three interest-only payments (October - December, 2009) but no other modifications have been made since.

SPCP is the owner and holder of the note, deed of trust and security interest, and the beneficiary (by assignment) of the deed of trust.

### MMP's Business Operations During the Chapter 11 Case

MMP continued to run its restaurant business during the Chapter 11, file its monthly operating reports without controversy, and attend to the necessary details inherent in a chapter 11 case.

In the process, MMP negotiated a cash collateral stipulation with SPCP, and included within it an agreement to make monthly payments to that creditor of $8,589 (see, e.g., ECF No. 21, 23, 36, 38).

On March 28, 2011, the court ordered that the MMP case and the Rusins' chapter 11 case was to be jointly administered (ECF No. 43).

### The Valuation Issue (BDFC)

Before confirmation of the MMP plan, MMP was required to obtain a determination of BDFC's secured/unsecured status. To this end, MMP filed an adversary proceeding (No.

---

[2] This security agreement references a loan amount of $2,720,000, dated April 23, 2007, due only four months later. In the larger picture, this may have no materiality, as the personal property has little intrinsic value.

11-ap-828) against BDFC on May 9, 2011, asserting that BDFC's legal status was that of only an unsecured creditor, and therefore seeking to "strip " its lien off of the real property.

Eventually, the parties stipulated to a value for the property, and under certain conditions, agreed that BDFC was to be treated as a fully unsecured creditor under the plan. An order approving that stipulation was entered September 21, 2011 (Adversary ECF No. 9).

The agreement paved the way for MMP to confirm its plan, five days later.

## The Track to Confirmation

On April 6, 2011 MMP and the Rusins filed a "Joint Chapter 11 Plan of Reorganization" (the "Plan"). In hindsight, this may be where the later problems began (as between SPCP and BDFC) because the cases were never substantively consolidated, and its takes some mental gymnastics to read one plan, but separate the assets and liabilities of two separate debtors.

The Plan needs to be dissected in order to understand exactly what is intended for (1) the MMP creditors, and (2) the Rusins' creditors. Here is what that dissection looks like.

| **Class** | **Affects MMP** | **Affects Rusin** | **Treatment** |
| --- | --- | --- | --- |
| Administrative Claims | Yes | Yes | Paid in full at confirmation |
| Priority Tax Claims | Yes | No | 10% cash at confirmation, quarterly instalments thereafter for 5 years |
| 1 - Secured Tax Claims | Yes | No | 10% cash at confirmation, quarterly instalments thereafter for 5 years |
| 2 - SPCP Secured Claim | Yes | No | $1,400,000 fair market value; 30-year amortization; retain lien on real property; 6% interest; $8,394 monthly payments |
| 3 - BDFC Secured Claim | Yes | No | No secured claim; no distribution as secured creditor |

| | | | |
|---|---|---|---|
| 4 - MMP Unsecured Claims | Yes | No | Share pro-rata in 60 monthly payments of $2,500 per month (includes BDFC and SPCP Rusin guarantees) |
| 5 - Equity | Yes | No | Retain |
| 6 - Rusin Irrevocable Trust (208 W. Fort Lowell) Secured Claim | No | Yes | Retain lien; unimpaired; pay pursuant to terms |
| 7 - Rusin Unsecured Claims | No | Yes | Paid pro-rata from contributions of $275 month (no term mentioned); does not include unsecured creditors dealt with in Class 4 |
| 8 - Debtors' "Interests" | No | Yes | Retain |

The description of the MMP Class 4 unsecured creditor group states that this class is intended to include within it:

- Deficiency claim of SPCP;
- BDFC unsecured claim of $1,133,615.07

And also includes:

- SPCP $320,000 unsecured HELOC claim of the Rusins, and which is also to be paid from the MMP $2,500 contribution, even though it originates from the Rusins, individually.

(ECF No. 48 at 16.)

Essentially, what the Rusins did was add to the MMP unsecured debt burden their personal obligation, the $320,000 HELOC debt, which had also been acquired by SPCP. This $320,000 was to be paid in addition to the other unsecured debts of MMP, from the MMP monthly pro-rated contribution of $2,500.

By September 23, 2011, both sets of debtors had rounded up sufficient votes for confirmation of the Plan. Objections to the Plan filed by Young Sign and SPCP (ECF Nos. 65,

7

70) were withdrawn. BDFC had never filed an objection to the Plan.[3] The Plan was confirmed by order dated September 26, 2011 (ECF No. 90). By then, MMP had found a party to pay the real property taxes, which satisfied a worry of SPCP, and that development eased the road to confirmation (ECF Nos. 77, 82, 92).

BDFC never objected to any aspect of the Debtors' joint Plan, and also never voted to either accept or reject it (see Ballot Report, ECF No. 85).

The confirmation order was not appealed, and is now final. It is also binding upon all creditors of either MMP, the Rusins or both. 11 U.S.C. § 1141(a).

### **The First Post-Confirmation Skirmish**

After the cases were confirmed, a brief flurry of activity arose as to whether the Debtor, MMP had timely made its first payment to SPCP. That issue was decided in MMP's favor (Adversary No. 11-ap-2173), and all other things legal, between MMP and SPCP, appear to be now floating on calm waters.

### **The Second-and This--Post-Confirmation Dispute**

With all of the background of these two cases now in our rearview mirror, the court can settle the current (and hopefully last) Plan interpretation issue affecting the cases.

---

[3] BDFC had, however, filed an objection to the Disclosure Statement (ECF No. 55), but that had no legal bearing on the ultimate confirmation.

8

Case 4:10-bk-38675-JMM    Doc 109    Filed 06/11/12    Entered 06/11/12 16:13:42    Desc
Main Document - Motion for Clarification    Page 8 of 10

**ISSUE:** Can SPCP participate in the MMP distributions for (1) its unsecured deficiency claims attributable to its undersecured real property lien, and (2) for the $320,000 HELOC debt owed to it by the Rusins, individually?

BDFC contends that SPCP's $320,000 debt is not an obligation that was ever owed it by MMP. Therefore, it argues that treating it in such a manner has violated rights that BDFC feels it has, and dilutes the Class 4 participation in the $2,500 monthly payment to the MMP creditors.

There is no question that is this exactly what it does. But it is too late for BDFC to complain. The Plan and disclosure statement were noticed to BDFC, and confirmed, all without objection to the Plan. No appeal was taken and no post-hearing motions (FED. R. BANKR. P. 9023) were filed.

BDFC had ample notice of all matters, and participated throughout the case at every stage. The Plan and disclosure statement were clear. There were no hidden agendas, and BDFC was not ambushed or sandbagged. It simply failed to react to what this court feels was clearly set forth in an unambiguous manner by the two sets of debtors.

The court, having read and studied all pleadings, and the entire files in each of the Chapter 11 cases, is unpersuaded by BDFC's arguments. To the contrary, the points made by SPCP are an accurate and compelling portrait of what occurred in the long history of these two cases.

The court therefore FINDS against BDFC and for SPCP.

## **CONCLUSION**

A separate order will be entered which:

1. DENIES BDFC's motion for clarification (ECF No. 98);

2. DENIES SPCP's request for attorneys' fees[4] (ECF No. 102); and

3. ORDERS the Debtors to distribute, in accordance with this Memorandum Decision, any funds intended for Class 4 which heretofore have been withheld, pending the decision in this matter.[5]

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Noticing Center ("BNC") to the following:

Charles R. Hyde, Attorney for Debtor MMP
Eric E. Button, Attorney for Debtors Rusin
K. Scott Reynolds, Attorney for SPCP Group IV, LLC
R. David Sobel, Attorneys for BDFC
Office of the U.S. Trustee

---

[4] Few cases, very few, qualify for sanctions under either § 105 (court's inherent authority) or FED. R. CIV. P. 11 (FED. R. BANKR. P. 9011). That type of litigation is typically long and ultimately unsatisfying to all parties. Here, all parties have been professional, responsive and courteous throughout. Sanctions of any type are simply not merited. As my wise colleague, the Honorable Christopher M. Klein (E.D. Ca.) is fond of saying, "The biggest sanction of all is being unable to convince the court that you were right." The outcome of this case is sanction enough.

[5] The court apologizes to the parties for the length of time it has taken to dispose of this matter. Between the time required to study these files, and the press of the court's other business, the court acknowledges that the length of this "under advisement ruling" has been too long.

Case 4:10-bk-38675-JMM    Doc 109    Filed 06/11/12    Entered 06/11/12 16:13:42    Desc
Main Document - Motion for Clarification    Page 10 of 10

10